**Stephanie TRAKAS, Appellant,**

v.

**QUALITY BRANDS, INC.**

**No. 84–5229.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1985.

Decided April 16, 1985.

Scalia, Circuit Judge, filed dissenting opinion.

Mary P. Nyiri, Washington, D.C., for appellant. Louis Fireison, Bethesda, Md., was on brief, for appellant.

Larry C. Williams, Washington, D.C., for appellees.

Before WRIGHT, MIKVA and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting opinion filed by Circuit Judge SCALIA.

MIKVA, Circuit Judge:

Stephanie Trakas appeals from the district court's dismissal of her case with prejudice for want of prosecution. Trakas had sued Quality Brands, Inc., for breach of contract and for sex-based discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and the Equal Pay Act, 29 U.S.C. § 206. We find that in the special circumstances of this case, the trial judge abused her discretion by denying a continuance and dismissing the suit with prejudice. We therefore reverse and remand for further proceedings.

Under Fed.R.Civ.P. 41(b), a defendant may move for involuntary dismissal for "failure of the plaintiff to prosecute or to comply with these rules or any order of court." The cases indicate that use of the rule has been limited to egregious conduct by dilatory plaintiffs. The leading case on dismissal for want of prosecution is *Link v. Wabash Railroad,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), in which a sharply-divided Supreme Court upheld the dismissal of an action that had been pending for six years. The petitioner's lawyer had failed without reasonable explanation to appear for a pretrial conference, and the majority found that it "could reasonably be inferred ... that petitioner had been deliberately proceeding in a dilatory fashion." *Id.* at 633, 82 S.Ct. at 1390.

In the other cases cited by the defendant as upholding dismissal, the conduct was as bad or worse. *See, e.g., Asociacion de Empleados v. Rodriguez Morales,* 538 F.2d 915 (1st Cir.1976) (dismissal not an abuse of discretion where plaintiffs had already received one time extension, had failed to appear for a hearing, had failed to comply with court directives, had failed to meet a filing deadline after explicitly promising to meet it, and had proffered no plausible excuses); *Ramsay v. Bailey,* 531 F.2d 706 (5th Cir.1976) (dismissal not an abuse of discretion where action had been pending for more than three years, had already been dismissed for want of prosecution and then reinstated, the plaintiff had unreasonably delayed replying to a discovery order, had received several time extensions, had interposed frivolous motions, had failed to file a reply brief after promising the court its imminent delivery, and had ignored repeated warnings). As we have noted before, *see, e.g., Butler v. Pearson,* 636 F.2d 526, 529 (D.C.Cir.1980); *Jackson v. Washington Monthly Co.,* 569 F.2d 119, 121 (D.C.Cir.1977), *Link* and its progeny authorize dismissal where the record reveals "a course of protracted neglect."

The law of this circuit partakes of the general view that dismissal is an extremely harsh sanction and may be reversed when discretion is abused. *Camps v. C & P Telephone Co.,* 692 F.2d 120, 123–24 (D.C.Cir.1981). Since our system

favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success. *See id.; Jackson,* 569 F.2d at 123.

■ *Automated Datatron, Inc. v. Woodcock,* 659 F.2d 1168 (D.C.Cir.1981), relied upon so heavily by the dissent, is not to the contrary. In *Woodcock,* we upheld the dismissal of a count of a counterclaim where the dismissal resulted from the litigant's "prolonged failure"—over a period of six months—to comply with a clear instruction of the trial court to amend his pleadings. The litigant had had "ample opportunity" to comply, he had been instructed and warned to do so, and the necessary steps were "fully" within his control. We found that he had advanced no excuse apart from inadvertence or oversight and presented no special circumstances that might explain his neglect and "conspicuous disregard" of the court's directive. Compliance, we pointed out, would have been relatively simple. We observed, moreover, that although the dismissal occurred two weeks before trial, permitting the litigant to comply at that date would have necessitated rescheduling a trial which had already been postponed once before. Consideration of the record in the present case shows that the conduct of the plaintiff was not such as to reasonably warrant the sanction of dismissal.

Trakas was formerly a liquor saleswoman in the employ of the defendant and, allegedly, the only woman in the restaurant division of the company's sales force. On March 1, 1982, a new division sales manager was appointed. According to Trakas, her new supervisor publicly stated that one of his goals was to develop an all-male sales force. The defendant claims that Trakas was dismissed for failure to meet her sales quotas. Trakas describes that explanation as a pretext, asserting that she had increased sales in her territory every month and that male employees who failed to meet the quotas were not dismissed. Suffice it to say there are many facts at issue which will require a trial for resolution.

The record shows that Trakas lost her job on August 13, 1982, instituted administrative action on September 8, 1982, received a "right to sue" letter from the appropriate federal agency in the late summer of 1983, and forthwith instituted the present action on August 31, 1983. At a November 10, 1983 status call, the trial date was set for March 7, 1984.

Plaintiff remained unemployed after her firing. In June 1983, she moved to St. Louis, Missouri, where her husband, an attorney, had been offered a job. The plaintiff's husband was gainfully employed in November, when the trial date was set. In January 1984, however, he lost his job. With both spouses out of work, getting the money to travel to Washington for the trial unexpectedly became a problem. Trakas claims she planned to borrow the requisite funds from her parents but that at the last minute the parents did not provide the loan. On the weekend before trial, Trakas called her attorney to say that due solely to lack of funds she could not get to Washington but that she still desired to pursue her claim. She added that her husband had accepted employment as a waiter, and that she expected to have the necessary money within a month.

Trakas' attorney immediately notified opposing counsel and the district court. The timing was such that both had less than two days notice of Trakas' desire for a continuance. There was, however, sufficient advance warning for the defendant to call off its witnesses and for the judge to advise the jurors to stay home. The expense of an appearance by counsel might also have been spared had the judge ruled on the plaintiff's written motion, but the judge requested counsels' appearance on the scheduled trial date. In court, she denied the continuance, thereby rendering prosecution of the case impossible, and then dismissed for want of prosecution.

We obviously do not condone plaintiff's waiting so long to bring her financial difficulties to the attention of counsel and of

the court, but the error did not cause such consequences as to warrant the harsh sanction of dismissal. It is uncontroverted that up until the incident in question here, Trakas had pursued her claim diligently and expeditiously. No prior continuances had been sought and the only delay of any sort had been on the part of the defendant (in answering interrogatories). The record discloses no evidence whatsoever of bad faith, deliberate misconduct, or tactical delay.

The trial judge at several points suggested that because the plaintiff's husband is a member of the bar, she must necessarily have funds at her disposal. We find nothing in the record which supports such an inference. Plaintiff's attorney attested in court that plaintiff's husband had been out of work for two months and had finally agreed to work as a waiter, that the couple had sold possessions in order to meet their living expenses, and that, to the best of his knowledge, the couple was "living on a shoe string" and "very destitute." Counsel's assertions were supported later by a sworn affidavit from the plaintiff herself. None of the assertions was ever disputed by the defendant or contradicted by any record evidence. We must agree with the plaintiff's attorney that although the law is an illustrious profession, it is not invariably a profitable one, and, to the extent that the trial judge based her decision on a contrary unsubstantiated assumption, she erred.

The trial judge also placed considerable reliance on the unwillingness of plaintiff's counsel to assume court costs voluntarily. In light of plaintiff's financial situation, however, counsel's reluctance was perfectly justified. Nor did the trial judge apparently even consider other alternative sanctions that would also be less drastic than complete dismissal.

Plaintiff's first and only misstep was the last-minute request for a continuance to allow her to be present; without her, the case could not proceed. Defendant has introduced absolutely no evidence to refute plaintiff's claim that this impropriety occurred largely through circumstances beyond her control. Nor, as we noted above, is there any indication of bad faith, dilatory intent, or protracted neglect on the part of the plaintiff. In sum, we do not believe that the single act of misconduct in this case was sufficient to justify the action of the trial court. In so holding, we emphasize that we are fully cognizant of the need of trial courts to manage their calendars so as to dispense justice as expeditiously and efficiently as possible. As we held in *Camps*, 692 F.2d at 123, however, "a single act of misconduct seldom if ever can justify dismissal," and there is nothing in the facts of this case that would place it among the exceptions. We accordingly reverse the judgment and remand the case to the district court.

*It is so ordered.*

SCALIA, Circuit Judge, dissenting:

I think today's decision intrudes upon the discretion that belongs to trial judges and that is essential for the fair and expeditious conduct of their business.

It was not unreasonable for the trial judge to be skeptical regarding the utter inability of this plaintiff, formerly employed as a saleswoman, married to an attorney, and not proceeding *pro se* but represented by a private attorney, to scrape up the funds for a trip to Washington from St. Louis. As far as the record discloses, the plaintiff did not even consider so plebian a means of conveyance as bus, but planned to come by plane or not at all. Assuming, however, that it was not the plaintiff's burden to present at the hearing some demonstration of impecuniousness more substantial than the second-hand and undocumented assurances of counsel; and therefore assuming, with the majority, that "to the extent that the trial judge based her decision on [an] unsubstantiated assumption [of financial ability], she erred," Maj. op. at 188; that would still be no justification for our making the *contrary* assumption, based on no more than plaintiff's self-serving affidavit filed on motion for reconsideration. That appears to be, however, precisely what the majority

does, concluding that "the single act of misconduct in this case was [not] sufficient to justify the action of the trial court," and that "there is nothing in the facts of this case" that would support dismissal, Maj. op. at 188. Even if one believes that an impecunious plaintiff's failure to take reasonable precautions to prevent her impecuniousness from disrupting a scheduled trial at the eleventh hour is not enough to justify the District Court's action, the remand here should at the very least permit the court to conduct further inquiry into the fact of impecuniousness. As I read the opinion, that course is foreclosed.

More fundamentally, however, there seems to me no proper basis for setting aside the District Court's action at all. I shall discuss the case, as the majority has, as though we were reviewing the trial judge's discretion in dismissing (with prejudice) for misconduct. I must note preliminarily, however, that what is actually involved is a matter on which the trial judge's discretion is even more expansive and her decision even more necessarily sustained. Though the final action in the case took the form of a dismissal, the essence of appellant's complaint is the trial judge's *refusal to grant a continuance the day before trial.* The court, the jury and opposing counsel were ready to proceed; counsel for plaintiff said that he could not and would not do so, and requested a continuance. He argues before us, in effect, that he was *entitled* to the continuance even though he was unwilling to stand good for the costs that would impose upon the other side. Especially since the last-minute (and thus disruptive) need for the continuance was not attributable to any Act of God but to the plaintiff's own fault in not making her financial arrangements for the trip to Washington much earlier, reversing the trial judge's refusal to grant the continuance absent payment of costs is awe-inspiring. *None* of the cases cited by the majority involved such a matter of grace, and I am aware of no case reversing the trial judge's decision in a remotely similar context.

I shall assume, however, that we are dealing with an affirmative act of dismissal for misconduct, rather than merely a refusal to take extraordinary action to save the plaintiff from her own folly (and visit its effects upon the defendant). It is no small matter to have the judge and jury prepared for trial, and opposing counsel ready with the preparation of his case and his witnesses, and then to advise the court *the day before trial* (and opposing counsel only one day before that) that the plaintiff cannot proceed. *Whatever* Mrs. Trakas's financial condition might have been, there was no adequate excuse for this behavior. The majority suggests a state of facts more favorable than the record supports by saying that "Trakas claims she planned to borrow the requisite funds from her parents but that at the last minute the parents did not provide the loan." Maj. op. at 187. As far as appears, the parents failed to come through "at the last minute" not because they went back on an earlier commitment, but because Mrs. Trakas never bothered to ask them for the funds *until* "the last minute." Even her affidavit filed on motion for reconsideration asserts no more than that she was optimistic her parents would lend her the money, only to have that optimism shattered when they refused the Sunday before trial. Such a cavalier attitude towards the litigation is, on any basis, grave and inexcusable.

In *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court upheld dismissal for an attorney's failure to appear at a pretrial conference. While, as the majority notes, there were aggravating circumstances in that case that do not exist here, enabling the Court to infer "that petitioner had been deliberately proceeding in dilatory fashion," *id.* at 633, 82 S.Ct. at 1390; there are other factors here that in my view more than make up for that difference. Here, unlike there, it was the trial itself rather than merely a pretrial conference that was disrupted. Here, unlike there, the misdeeds of the attorney were not being visited upon the client, but the plaintiff was suffering the consequences of her own failure to give prosecution of her case the attention it required. And most important

of all, here, unlike there, the sanction of dismissal was imposed *only after plaintiff's counsel rejected the alternative sanction of paying the other side's costs attributable to* the delay *—which, as I shall discuss below, was the only alternative to dismissal that would have been effective.

The expansive dictum in *Camps v. C & P Telephone Co.*, 692 F.2d 120, 123 (D.C.Cir. 1981), relied upon by the majority, to the effect that "a single act of misconduct seldom if ever can justify dismissal" is plainly an exaggeration insofar as the "if ever" is concerned. (Is it conceivable that *no* single act can *ever* warrant the sanction?) And the "seldom" part is neither very informative nor notably applicable here. One must hope it is seldom that a party to litigation will inexcusably wait until the day before trial to advise the court that it must be rescheduled for a reason she could have been aware of weeks before. I find nothing in the holding of *Camps* or of the two other decisions of this court cited by the majority—*Butler v. Pearson*, 636 F.2d 526 (D.C.Cir.1980), and *Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C.Cir.1977)— incompatible with the action of the District Court here. None of them involved misconduct equivalently grievous and disruptive, and all involved misconduct by the attorney rather than the party herself—except *Camps*, which involved a *pro se* litigant's appearance "10 to 30 minutes late for [a] status call," 692 F.2d at 122. What I do find strikingly incompatible, however, is the holding of the majority and the holding of this court in *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168 (D.C.Cir.

1981), which upheld dismissal of a counterclaim for failing to comply with a court order to join a party. There was no indication of bad faith or dilatory intent, but merely of "oversight," *id.* at 1169; the fault was that of the lawyer rather than the litigant; though the trial would have had to be rescheduled in order to permit the added party to prepare his defense, there was at least time (two weeks from the point at which the court learned of the defect) to replace the trial with another case on the court's docket; and we acknowledged that "a less drastic sanction" might have been possible, *id.* We held, nonetheless, that the trial court had not abused the discretion it must have "[t]o prevent litigation delay and waste of scarce judicial resources," *id.*

The majority faults the trial judge for her failure "apparently even [to] consider other alternative sanctions [*i.e.,* other than assessment of costs] that would also be less drastic than complete dismissal," Maj. op. at 188. That criticism would be more appropriate if it were joined with some suggestion of what other alternative sanction would be effective—both to compensate the other side for the costs inflicted by the plaintiff's conduct and to deter such conduct in the future. *See Locascio v. Teletype Corp.*, 694 F.2d 497, 499 (7th Cir. 1982), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808 (1983) (dismissal for failure to prosecute proper when "lesser sanctions either have not been or will not be effective"); *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir.1976) (same). *Cf. Hobson v. Wilson*, 737 F.2d 1, 46 (D.C.Cir. 1984) (refusal to dismiss proper because,

* At the time of the dismissal, counsel asserted that he had no authority from his client to agree to such a lesser sanction. Even if it be thought, however, that he should not have discussed this obvious possibility with his client in advance, he did not ask the court for time to conduct such consultation. Moreover, he had time to do so before filing his motion for reconsideration of the dismissal a month-and-a-half later; that also did not agree to the lesser sanction. Plaintiff's Motion for Reconsideration, *Trakas v. International Distributor Corp.*, Civ. No. 83–2562 (D.D.C. Apr. 25, 1984).

It should be noted in this regard that plaintiff did not purport to be permanently indigent, but rather to be suffering from temporary unemployment of her and her husband. In any case, if regard for the plaintiff's presumed permanent indigency is what moves the majority to disregard the offer and rejection of the alternate sanction, it seems to me to establish a frightful proposition of law. Surely it cannot be that a *permanently indigent plaintiff* with an unmeritorious case can impose unjustified expenses upon the other side with impunity—being immune (out of consideration for indigency) from even an *assessment* of costs, and immune from dismissal as well.

*inter alia,* "the alternative to dismissal that was imposed ... adequately protected [defendant's] interests"). I, at least, can conceive of none. A dismissal *without* prejudice leaves the plaintiff free to continue the litigation without compensating the defendant for the costs she has inflicted; and is no deterrent against such misconduct in the future where the plaintiff is positively desirous of protracting the litigation. Requiring the plaintiff to compensate the defendant out of her recovery constitutes no sanction whatever if the suit proves to be not only wrongfully delayed but in addition unmeritorious, so that there is no recovery from which the costs can be deducted. It also is a toothless deterrent against similar action in the future by precisely those plaintiffs who are most likely to engage in it—*i.e.,* those whose cases are so weak that they do not fear a threat of reduction of their recovery, and who are using litigation and the protraction of litigation to extort a settlement. It is interesting (and utterly incomprehensible) that the sanction of costs which the majority rejects as excessive here was precisely the sanction *ordered by this court* (for the much lesser misconduct of failure to respond to discovery requests) in its remand of the dismissal in *Butler, supra. See* 636 F.2d at 531.

Perhaps it could be argued that the district judge erred in a respect not considered by the majority—*i.e.,* in failing to impose the reasonable sanction of costs (rather than dismissal) despite the plaintiff's lack of agreement to that alternative. But that is not what appellant complains of here, nor what she requested in the motion for reconsideration below. Apart from the consideration that we should not reverse for an error both invited and unassigned, the fact is that absent an agreement to or request for that alternative, we cannot really be sure that it *is* a "lesser" sanction than dismissal. The trade-off between fixed pecuniary liability and the foregoing of a chance for future recovery depends largely upon how good the chance of recovery is. For all we know, Mrs. Trakas would be well advised to take dismissal instead of costs. There is in any event no basis for saying that the District Court abused its discretion in declining to impose upon the plaintiff a choice she rejected, and continues to reject.

I reemphasize that Mrs. Trakas was not being punished for her temporary impecuniousness, if that was indeed her situation, but for her inexplicable failure to take the steps necessary to prevent that situation from causing serious disruption of the trial process and imposing unnecessary expenses upon the defendant. Had she advised the court and counsel of her inability to appear a decent time in advance; or had she even made the necessary plans to appear (for example, by obtaining her parents' agreement to provide her the funds), which plans went awry at the last minute; it would be a different matter. But here we have a case of an intelligent woman who was seriously remiss in her obligation to take the most rudimentary steps for prosecution of the litigation, and who refused to stand good for the costs which her action wrongfully imposed on the other side. It may well be that, were this court vested with the discretion that belongs to the district judge, *see, e.g., Hornbuckle v. ARCO Oil & Gas Co.,* 732 F.2d 1233, 1237 (5th Cir.1984); *Locascio v. Teletype Corp.,* 694 F.2d at 499, it would have been more merciful to the plaintiff (at the defendant's expense); but it seems to me impossible to say that the district judge's action was beyond the bounds of the reasonable.

It is fine for the majority to "emphasize that we are fully cognizant of the need of trial courts to manage their calendars so as to dispense justice as expeditiously and efficiently as possible," Maj. op. at 188. But if that cognition is to have any extra-psychic effect, then, as we said in *Automated Datatron,* 659 F.2d at 1170, the district judge's "power to dismiss, in situations such as the one before us, must be more than theoretical."

I dissent.