Alan M. GROCHAL, Trustee for Instant-whip-Washington, D.C., Appellant,

v.

AERATION PROCESSES, INC., d/b/a Instantwhip Foods, Inc., et al.

No. 85–5766.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1986.

Decided Aug. 19, 1986.

Edward J. Carnot, for appellant.

Samuel H. Young, Skokie, Ill., with whom Joseph Tasker, Jr., Washington, D.C., was on brief, for appellees.

Before WALD, Chief Judge, BUCKLEY, Circuit Judge, and WRIGHT, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Plaintiff-appellant Instantwhip-Washington, D.C. ("I.W.") appeals orders of the district court denying its motion for a continuance, dismissing its complaint with prejudice, and denying its motion for reinstatement of its complaint. The district court dismissed I.W.'s complaint at the pretrial conference in response to a motion by defendant-appellee Aeration Processes, Inc. ("Aeration"). The court reasoned that dismissal was warranted by I.W.'s failure to subpoena an essential witness for trial and its failure to provide information relating to its damage claims prior to the pretrial conference. Because, under the circumstances of this case, neither of these justifications is adequate to support the district court's action, we reverse and remand with instructions to try the case on the merits.

## I. FACTUAL BACKGROUND

Between 1935 and 1981, I.W. was a franchisee of Aeration engaged in the business of manufacturing and distributing whipped cream products. I.W.'s customers included other Aeration franchisees that distributed but did not themselves manufacture aerosol whipped cream products. In 1981 these other Aeration franchisees stopped buying from I.W., causing a substantial drop in I.W.'s sales. In addition, Aeration significantly increased the rent it charged I.W. for use of I.W.'s manufacturing facility, thereby prompting I.W. to vacate that facility.

As a consequence of these developments, I.W. filed a complaint on August 24, 1984, asserting antitrust, contract and tort claims against Aeration and several of its subsidiaries, franchisees, and employees. At a scheduling conference on December 18, 1984, the district court set a trial date of April 22, 1985 and a pretrial conference date of April 11. The pretrial conference was subsequently rescheduled for April 18 at the request of Aeration. The court specified on December 18 that all discovery was to be completed by the pretrial conference. This deadline was reiterated in the court's March 6 pretrial order. The pretrial order further required both sides to submit their trial exhibits at the pretrial conference, to "[i]dentify, in writing, precise facts relied on and opinions of any proposed expert," and to provide "[f]ull itemization of all special damages claimed and supporting documentation" at the conference.

Discovery began in January 1985 when I.W. served Aeration with three notices of deposition and two requests for production of documents. Aeration responded with motions for protective orders with respect to all of I.W.'s discovery requests. In February, Aeration submitted its own discovery requests, consisting of two sets of interrogatories, a request for admission of facts, and a request for production of documents. Like Aeration, I.W. moved for a protective order with respect to the discovery sought by Aeration.

The district court rejected all requests for protective orders. Aeration's motion was denied on March 12, and the court directed it to respond to I.W.'s document request by March 25. I.W.'s motion was denied on March 27, and the court ordered it to respond to Aeration's requests within 10 days.

I.W. submitted timely responses to Aeration's requests on April 8, 1985. In addition to producing on that date the documents demanded by Aeration, I.W. answered the 89 questions contained in Aeration's first and second sets of interrogatories. Aeration subsequently asserted that I.W.'s responses to five of these interrogatories were incomplete.[1] Aeration first

---

**1.** Interrogatory 17(c) of Aeration's first set of interrogatories asked I.W. to "[i]temize each element of damages claimed in this suit, giving a description of how each such item was calculated and a statement of the connection, if any, between the wrongful conduct charged against defendants and any such element of damages." In response to this interrogatory, I.W. stated

"[s]ee documents provided by plaintiff in response to defendant's request for documents." Interrogatory 63(d) of Aeration's first set of interrogatories asked I.W. to identify "[t]o the extent not previously stated in answers to these interrogatories ... [t]he amount of any damage ... caused to plaintiff and the manner in which such amount was computed." I.W. stated in

brought this matter to the court's attention at a status conference on April 12, but no formal motion was made and the court issued no order at that time with respect to the interrogatory responses. One week later, at the pretrial conference, Aeration moved for an order preventing I.W. from offering proof of damages at trial. Aeration argued that such an order was warranted because it was unable to defend against I.W.'s damage claims without the itemization of damages demanded by the five interrogatories. At no time, however, did Aeration move to compel more complete responses to its interrogatories under Fed. R.Civ.P. 37(a). Rather, Aeration waited until the pretrial conference to formally request court action with respect to I.W.'s failure to itemize damages.

The one Aeration discovery request to which I.W. produced no response at all on April 8 was Aeration's third set of interrogatories. These were served by mail on March 18, and contained four questions requesting the identities of and opinions held by I.W.'s expert witnesses. I.W. did not respond to these interrogatories until the pretrial conference. Indeed, it appears that I.W.'s lawyer was very careful during depositions of I.W. witnesses to protect the identity of his expert witness.

The pretrial conference began on April 18, 1985. The principal topic of discussion at the conference was the alleged failure of I.W. to provide information relating to its damage claims. In this regard the court expressed dissatisfaction with I.W.'s failure to fully answer Aeration's interrogatories. I.W. also notified the court that one of its essential witnesses had left the country unexpectedly because of a family emergency. I.W. explained that the witness would probably be back in time to testify at trial, but there was no guarantee of this. I.W. stated that it had not originally subpoenaed this witness because there had been no reason to expect him not to appear at trial, but a process server had been sent to his house to serve him with a subpoena upon his return to the United States. I.W. indicated that it would be unable to go to trial without this witness.

A number of motions were submitted by Aeration at the conference, including a motion for summary judgment. The court stated that additional time would be required before these motions could be decided. The conference accordingly was extended until the following day, Friday, April 19, the last working day before the trial.

Immediately after the April 18 conference, I.W.'s lawyer offered Aeration a complete set of I.W.'s trial exhibits as required by the pretrial order. Aeration's lawyer stated, however, that he had not had time to make copies of Aeration's exhibits for I.W. Counsel thereupon agreed to exchange exhibits at the pretrial conference the following day.

At the reconvened conference on April 19, I.W. stated that it had been unable to locate its missing witness and therefore could not assure the court of his appearance at trial. The court explained that, because the case was to be tried by a jury, I.W. would have to decide immediately whether it was prepared to go to trial the following Monday. I.W. indicated that it could not proceed without the missing witness, and it accordingly requested a continuance to the next available date.

Before the court could rule on this matter, Aeration moved to bar the testimony of I.W.'s expert accounting witness and use of the exhibits this witness had prepared concerning I.W.'s damage claims. Without this evidence, I.W. would be left with no proof of the damages that it had allegedly sustained. Aeration offered three reasons for granting its motion. First, it argued that I.W. had wrongfully concealed the identity of its accounting expert until the

response to this interrogatory "[s]ee answers number 1 through number 62 and Attachment." Interrogatories 24, 25 and 26 of Aeration's second set of interrogatories asked I.W. to itemize the damages sustained by it in connection with counts III, IV and V of its complaint. I.W. stated in response to each of these interrogatories that "[d]amages are being calculated and will be provided in accordance with the Pretrial Order."

pretrial conference. Second, it suggested that I.W. had violated the pretrial order by refusing to exchange trial exhibits detailing its damage claims on the first day of the pretrial conference. Third, it claimed that I.W. had failed to respond adequately to five questions concerning damages in Aeration's first and second sets of interrogatories.

The court accepted these arguments and, pursuant to Fed.R.Civ.P. 37(b)(2)(B) and 37(d), granted Aeration's motion to exclude I.W.'s evidence relating to damages. In addition, the court denied I.W.'s motion to postpone the trial, apparently on the ground that I.W. should have subpoenaed its missing witness. The court then ruled that, without any evidence of I.W.'s damages, conducting a trial would be pointless. The court accordingly dismissed I.W.'s complaint with prejudice to renewing its claims in the district court. These rulings were summarized by the district court in an order dated April 19, 1985. In a subsequent order dated April 23, 1985, the court ruled on a variety of other motions presented at the pretrial conference and reiterated its grant of Aeration's motion to exclude I.W.'s evidence concerning damages.[2] I.W. then submitted a motion to reconsider and reinstate its complaint, which was denied by the court in an order dated May 30, 1985.

## II. DISCUSSION

### A. *I.W.'s Request for a Continuance*

To the extent that the district court's dismissal of I.W.'s complaint was based on I.W.'s request for a continuance, our decision in *Trakas v. Quality Brands, Inc.,* 759

F.2d 185, 187–88 (D.C.Cir.1985), requires us to find that the court abused its discretion. In *Trakas,* the district court dismissed a civil rights action for want of prosecution when, two days prior to trial, the plaintiff's attorney requested a continuance because unexpected financial difficulties prevented the plaintiff from appearing at trial. This court ordered the complaint reinstated, explaining:

> We obviously do not condone plaintiff's waiting so long to bring her financial difficulties to the attention of counsel and of the court, but the error did not cause such consequences as to warrant the harsh sanction of dismissal. It is uncontroverted that up until the incident in question here, [the plaintiff] had pursued her claim diligently and expeditiously. No prior continuances had been sought.... The record discloses no evidence whatsoever of bad faith, deliberate misconduct, or tactical delay.

*Id.* Similarly in the instant case, I.W. proffered a reasonable explanation for its request, I.W. had not previously sought a continuance, and there was no evidence of "bad faith, deliberate misconduct, or tactical delay."

It is indeed true that I.W. might have avoided the necessity of requesting a continuance had it served a subpoena on its missing witness. Affirming the district court on this basis, however, would be tantamount to ruling that litigants are required to subpoena all witnesses for trial, regardless of how certain they are that the witnesses will appear. To impose such a burden on litigants and the courts would be "wasteful of administrative resources."

---

2. Among the other matters decided in the April 23 order was a motion by Aeration under Fed.R.Civ.P. 37 for an award of costs in connection with the failure of an I.W. employee, Barbara Sagges, to appear at her deposition. Aeration contended in its motion that Sagges had been properly subpoenaed and that I.W.'s lawyers knew that she would not appear but did not share this information with Aeration. In its April 23 order the court granted Aeration's motion "with alternative relief." The court did not identify the "alternative relief" awarded, and we are unable to discern what the court meant by this statement. Clearly the court did not mean

that it had sanctioned the failure of the employee to appear by dismissing I.W.'s complaint, for such relief is not authorized by Fed.R.Civ.P. 37. Under Rule 37(d), a complaint may be dismissed only if "a party or an officer, director, or managing agent of a party or a person designated ... to testify on behalf of a party" fails to appear at his deposition. Sagges fell into none of these categories. The court therefore was without authority to sanction her failure to appear by dismissing I.W.'s complaint. The proper remedy in this situation would have been to find Sagges in contempt of court pursuant to Rule 37(b)(1).

*Wells v. Rushing,* 755 F.2d 376, 381 (5th Cir.1985).

In the circumstances of this case, I.W. had no reason to believe that a subpoena would be necessary. The witness had cooperated fully throughout discovery and had promised to appear at trial. The family emergency that required him to leave the country was entirely unexpected, and I.W. cannot be faulted for failing to anticipate such a development. We can find no authority for the proposition that, confronted with a request for a continuance under circumstances like those presented here, the district court has discretion not only to deny the request, but also to dismiss the action. *Cf. United States v. Cacciatore,* 487 F.2d 240, 244 (2d Cir.1973) (reversing trial judge's dismissal of a criminal prosecution for violation of the defendants' right to a speedy trial where the prosecutor acted reasonably in not subpoenaing essential witnesses for trial).

 To be sure, the fact that I.W. twice represented to the court that the witness was "essential" to its case and that it could not proceed to trial without him suggests that serving him with a subpoena would have been prudent. If, rather than dismissing the action, the district court had merely denied I.W.'s request for a continuance, it could conceivably be argued that the district court should be affirmed because I.W. assumed the risk that its "essential" witness would not appear when it failed to subpoena him. Even under this scenario, however, there is persuasive authority that refusing to delay the trial would have been an abuse of discretion. *See id.; accord Trakas v. Quality Brands, Inc.,* 759 F.2d at 187–88. We therefore hold that the district court abused its discretion both in dismissing I.W.'s complaint on the basis of its request for a continuance, and in refusing the requested continuance.

**B.** *I.W.'s Failure to Provide Information Relating to Its Damage Claims*

As explained above, Aeration claimed at the pretrial conference that I.W. had failed in three respects to provide information relating to its damage claims. Aeration alleged that I.W. had wrongfully concealed the identity of its accounting expert, that it had refused to exchange trial exhibits detailing its damage claims, and that it had not adequately responded to five interrogatories concerning damages. All three contentions were apparently accepted by the district court in ruling to exclude I.W.'s proof of damages.

The first two of these allegations are clearly specious. With respect to I.W.'s purported concealment of the identity of its accounting expert, Aeration was simply incorrect in suggesting that I.W. was under an obligation to identify its expert prior to the pretrial conference. Aeration did not ask I.W. to identify its expert witnesses until March 18, when Aeration served its third set of interrogatories on I.W. Because these interrogatories were served by mail, I.W. had 33 days to respond. *See* Fed.R.Civ.P. 6(e) and 33(a). This time period was superseded by the requirement of the amended pretrial order that experts be identified by the time of the pretrial conference on April 18. I.W. identified its accounting expert at the pretrial conference and therefore was in full compliance with the pretrial order and the rules of discovery.

The allegation that I.W. refused to exchange trial exhibits during the first day of the pretrial conference is also incorrect. As described above, the only reason that the exhibits were not exchanged on April 18 was that Aeration did not have extra copies of *its* exhibits. Counsel thereupon agreed to exchange exhibits the following day, and on April 19 Aeration received I.W.'s exhibits in accordance with this agreement. *See* Hearing Transcript, April 19, 1985 at 34–35. Once again, I.W. was in compliance with the pretrial order.

 Aeration's third claim of factual concealment is more plausible than the first two, but upon closer analysis it too must be rejected as meritless. We fully agree with Aeration's contention that

I.W.'s responses to the five interrogatories relating to damages should have been more complete. The question before this court, however, is whether the responses were so inadequate as to warrant exclusion of I.W.'s evidence of damages and, as a necessary consequence of such exclusion, dismissal of I.W.'s complaint. Our review of the pertinent authorities satisfies us that I.W.'s responses were not sufficiently inadequate to justify granting the motion to exclude introduction of any proof of damages or expert witness testimony. As this evidence should not have been excluded, I.W.'s complaint should not have been dismissed.

■ As this court recently observed, " 'dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." *Shea v. Donohoe Construction Co.*, 795 F.2d 1071, 1075 (D.C.Cir.1986), (quoting *Trakas v. Quality Brands, Inc.*, 759 F.2d at 187). Applying this principle, the court in *Shea* ordered reinstatement of a complaint that had been dismissed because the plaintiff's attorneys failed to appear at three status calls. The court found that neither the defendant nor the orderly administration of justice were sufficiently prejudiced by the dereliction of the plaintiff's attorneys to warrant dismissal of the complaint. Insofar as dismissal was intended to deter similar misconduct in the future, the court stated "[w]e look disfavorably upon dismissals as sanctions for attorney misconduct or delay *unless the client himself has been made aware of the problem, usually through notice from the trial court. Id.* at 1078 (emphasis in the original). Finding no basis for imputing the attorneys' misconduct to the plaintiff, the court ordered reinstatement of the complaint, noting that "the District Court should first attempt to sanction the attorney at fault." *Id.* at 1077.

Our decisions involving dismissal as a sanction for the failure of a plaintiff to cooperate in discovery are consistent with *Shea.* In far more egregious circumstances than those presented in the instant case, this court has reinstated complaints dismissed by the district court for failure of the plaintiff to obey the rules of discovery. For instance, in *Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C.Cir.1977), a complaint was reinstated despite the failure of plaintiff's lawyer to obey an explicit court order to report on the progress of settlement negotiations within 30 days. The court emphasized that since only one court order had been disregarded, there was no history of neglect by the plaintiff's lawyer. It was further observed that parties should not ordinarily be penalized for the misconduct of their attorneys. *Id.* at 123. Similarly, in *Butler v. Pearson*, 636 F.2d 526 (D.C.Cir.1980), this court ordered reinstatement of a complaint where the plaintiffs failed for almost five months to provide any response to interrogatories. The court noted that under the pretrial order the plaintiffs still had eight days to respond when their complaint was dismissed, though the time to respond under the federal rules had long since passed. In addition, the court observed that the plaintiffs were not technically in violation of any orders of the court. *See also Robison v. Transamerica Insurance Co.*, 368 F.2d 37 (10th Cir.1966) (dismissal of complaint at pretrial conference reversed where plaintiff submitted reasons for his failure to respond to interrogatories and offered at the conference to provide answers).

The cases cited by Aeration are readily distinguishable because all involved much more serious abuses of the discovery process than in the present case. For example, dismissal was upheld in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976), where the trial court found that the plaintiff had acted in "flagrant bad faith" and "callous disregard" of the rules by failing to file timely responses to discovery requests, and then eventually filing responses that were "grossly inadequate." Likewise, in *Weisberg v. Webster*, 749 F.2d 864 (D.C.Cir. 1984), dismissal was affirmed where the plaintiff ignored two explicit court orders to produce documents. *G–K Properties v.*

*Redevelopment Agency of the City of San Jose,* 577 F.2d 645 (9th Cir.1978), similarly is distinguishable in that the plaintiffs ignored for more than three months a court order requiring them to produce documents.

In contrast to these cases, I.W. was at no time in clear violation of a court order regarding discovery. The court's March 25, 1985 order denying I.W.'s request for a protective order directed I.W. to respond to Aeration's first and second sets of interrogatories, but it did not specifically require a more definite response to the five interrogatories in question. Nor did the court specifically direct I.W. to elaborate on its responses to the five interrogatories at the April 12 status conference where this matter was first brought to the court's attention. In addition to distinguishing the cases cited by Aeration, the fact that I.W. was not in violation of any court orders reflects the failure of Aeration to request, and the failure of the court to take, any steps to obtain more complete interrogatory responses from I.W. before the action was dismissed. At no time was any consideration given to issuing an order to compel discovery under Rule 37(a), nor were any sanctions less severe than dismissal considered.

It is also significant that the facts of this case provide no basis for imputing the misconduct of I.W.'s lawyers, such as it was, to I.W. *See Shea v. Donohoe Construction Co.,* at 1078. I.W. was at no time advised of the district court's growing frustration with its lawyers. Indeed, the lawyers themselves were not advised of their tenuous situation by means of a court order requiring them to cooperate more fully

in discovery, and the court obviously made no effort to sanction the lawyers before sanctioning I.W.

In short, our decisions establish that a plaintiff must be more derelict than was I.W. before dismissal of its complaint is justified. Though I.W.'s lawyers certainly could have been more forthcoming in their responses to Aeration's discovery requests, we do not think that this case presented circumstances warranting the district court's imposition on I.W. of "a sanction of last resort." *Trakas v. Quality Brands, Inc.,* 759 F.2d at 187.

### III. Conclusion

Our review of the record in this case convinces us that there was a lamentable failure on the part of counsel for both I.W. and Aeration to cooperate in the discovery process. We can appreciate the frustration that the district court must have felt in attempting to resolve the seemingly endless procession of petty problems that the parties brought to its attention. A number of sanctions were available to the court under the circumstances, but dismissal of the action was not among them. The district court's solution worked solely to the benefit of Aeration and to the detriment of I.W. We therefore reverse the decision of the district court and remand with instructions to try the case on the merits.

*Reversed and Remanded.*