Lorenzo CAMPS, Appellant

v.

C & P TELEPHONE CO., et al.

No. 80–1799.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 23, 1981.

Decided Dec. 31, 1981.

As Amended Dec. 31, 1982,
Jan. 11 and Sept. 21, 1982.

Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 79–3462); John H. Pratt, J.

Lorenzo Camps, pro se.

Raymond R. Baca, Atty., E.E.O.C., with whom Leroy D. Clark, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, and Vella M. Fink, Acting Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee E.E.O.C.

Bernard M. Dworski and Charles M. Carron, Washington, D.C., were on the brief for appellee C & P Tel. Co.

Michael A. Murphy and Thomas H. Kohn, Washington, D.C., entered appearances for appellee Communication Workers of America, Local 2336.

Before ROBINSON, Chief Judge, and MacKINNON and EDWARDS, Circuit Judges.

Opinion for the Court filed by Chief Judge ROBINSON.

Opinion dissenting in part and concurring in part filed by Circuit Judge MacKINNON.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

Appellant, Lorenzo Camps, seeks reversal of two orders of the District Court which in

combination released all opposing parties from his Title VII lawsuit. By one of the orders, the Chesapeake and Potomac Telephone Company (C & P) and the Communication Workers of America (CWA) were dismissed on the ground of non-prosecution of the action as to them; by the other, the Equal Employment Opportunity Commission (EEOC) was discharged alternatively on grounds of Camps' inability to state a claim upon which relief could be granted and his failure to respond to EEOC's motion for dismissal on that account.

We find that the District Court erred in halting the litigation against C & P and CWA, and accordingly we reverse and remand for resumption of the proceedings against those parties. Because, however, Camps did not contest in that court the dismissal of EEOC, and since the order effectuating it remains interlocutory, we conclude that any reasons Camps may have for altering that disposition are more properly addressed in the first instance to the District Court on remand.

## I. BACKGROUND

Camps, a black male, filed a charge of employment discrimination with EEOC, asserting that he had been suspended and ultimately discharged by C & P because of his race. Several months later, Camps registered a second complaint of discrimination, this time against CWA, claiming that the union had failed to accord him proper representation in his effort to resolve his grievance against C & P. EEOC subsequently issued a right-to-sue notice, finding

that there existed no reasonable cause to believe that either C & P or CWA had discriminated against Camps.[1]

Acting *pro se*, Camps brought suit against EEOC, C & P, and CWA in the District Court pursuant to Section 706(f)(1) of Title VII of the Civil Rights Act of 1964.[2] Camps complained that C & P had unlawfully harassed and finally discharged him because of his race, and then had conspired to impede the ensuing investigation of his claim.[3] He alleged that CWA also had racially discriminated against him by failing to represent him against C & P, in violation of union bylaws and in breach of an operative collective bargaining agreement.[4] EEOC, Camps asserted, had hindered rather than helped him with his accusations, and had not investigated his charges of discrimination adequately.[5] Because of these allegedly unlawful activities, he requested both monetary and unspecified injunctive relief.[6]

EEOC moved to dismiss Camps' complaint for failure to state a claim upon which relief could be granted against EEOC.[7] When six weeks had elapsed with no response from Camps, the District Court granted EEOC's motion.[8] The court, invoking a local rule,[9] treated the motion as conceded because it was unopposed,[10] and, in the alternative, ruled that Camps had not stated a legally remediable claim against EEOC.[11]

The District Court later scheduled a status call with respect to the claims still pending against C & P and CWA.[12] Camps telephoned on the preceding day to verify

1. *Camps v. Chesapeake & Potomac Tel. Co.,* Civ. No. 79–3462 (D.D.C.), Complaint, Ex. 1 (filed Dec. 27, 1979) [hereinafter cited as Complaint].

2. 42 U.S.C. § 2000e–5(f)(1) (1976).

3. Complaint, *supra* note 1, at 2, Count 1, ¶ 3 & Count 2.

4. *Id.* at 2–3, Counts 3 & 4.

5. *Id.* at 3, Count 5.

6. *Id.* at 3–4.

7. *Camps v. Chesapeake & Potomac Tel. Co., supra* note 1, Motion by EEOC to Dismiss (filed Apr. 16, 1980).

8. *Camps v. Chesapeake & Potomac Tel. Co., supra* note 1, Order (filed May 27, 1980) at 2.

9. D.D.C.R. 1–9(d).

10. *Camps v. Chesapeake & Potomac Tel. Co., supra* note 1, Order (filed May 27, 1980) at 2.

11. *Id.*

12. *Camps v. Chesapeake & Potomac Tel. Co., supra* note 1, Order (filed July 10, 1980) at 1.

the date and hour of the status call.[13] When, at the time appointed, the court convened, however, Camps was not present, and had not arrived when the court recessed approximately ten minutes thereafter.[14] Because of Camps' absence, the court dismissed the action against C & P and CWA for want of prosecution.[15]

At oral argument before this court, Camps—still *pro se*—related the incident from his standpoint. He arrived 10 to 30 minutes late for the status call to find the courtroom closed and locked. He telephoned the judge's chambers—at approximately 10:03 a.m., the record discloses [16] —and spoke with a law clerk. Camps informed us that his tardiness was "due to circumstances beyond [his] control," but that in his conversation with the District Judge's law clerk he was not asked, nor did he offer, any explanation therefor.[17] It is clear that he was told by the law clerk that his case had been dismissed, and was informed that he could ask the District Court to vacate the dismissal or appeal its decision.[18]

## II. THE DISMISSAL OF C & P AND CWA

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may enter an involuntary dismissal of a case "[f]or failure of a plaintiff to prosecute or to comply with [the Civil Rules] or any order of court." The leading case on involuntary dismissals is *Link v. Wabash Railroad,*[19] wherein the Supreme Court held that Rule 41(b) codifies the inherent power of a court to dismiss a case for want of prosecution,[20] and proceeded to affirm a district court's *sua sponte* dismissal because of the failure of a plaintiff's counsel to attend a pretrial conference.[21] The lawyer's default there, however, was merely the culmination of a protracted course of dilatory tactics and other improper behavior [22] in litigation that had dragged on for six years.[23] The *Link* Court emphasized that its ruling was based on the full circumstances of the case, and specifically reserved decision on the question whether a single delinquency of counsel can ever justify dismissal under Rule 41(b).[24]

In *Jackson v. Washington Monthly Company,*[25] and again in *Butler v. Pearson,*[26] this court addressed that very question. In each, we concluded that dismissal is rarely if ever appropriate when there is but a single instance of attorney-misconduct; [27] and in *Jackson* we took pains to sound a note of caution:

**13.** *Id.*

**14.** *Id.* After convening at 9:30 a.m. on the date set, the court first considered criminal matters, and was ready for the status call in Camps' case at approximately 9:38. *Id.* After inquiry of opposing counsel as to Camps' whereabouts and advice by a law clerk that Camps had confirmed the time with the judge's secretary, the court, in its words, "as is our practice when plaintiffs are neither present nor represented at a status call, . . . dismissed this case for prosecution." *Id.* At 9:40 a.m., having no further matters in the courtroom, the court recessed. *Id.*

**15.** *Id.* at 2. See also note 14 *supra.*

**16.** *Id.* at 1.

**17.** This version may be entirely consistent with the record. It is not clear from the dismissal order's recitals whether the law clerk asked Camps for an explanation for his lateness or simply inquired whether Camps had understood that the status call had been set for 9:30 a.m. See *id.* In any event, this factual ambiguity is not critical to our resolution of this appeal.

**18.** *Id.* at 1–2.

**19.** 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**20.** *Id.* at 630, 82 S.Ct. at 1388–1399, 8 L.Ed.2d at 737–738.

**21.** *Id.* at 633, 636, 82 S.Ct. at 1390, 1391–1392, 8 L.Ed.2d at 739, 741.

**22.** *Id.* at 634–635 & n.11, 82 S.Ct. at 1390–1391 & n.11, 8 L.Ed.2d at 740–741 & n.11.

**23.** *Id.* at 627, 82 S.Ct. at 1387, 8 L.Ed.2d at 736.

**24.** *Id.* at 634, 82 S.Ct. at 1391, 8 L.Ed.2d at 740.

**25.** 186 U.S.App.D.C. 288, 569 F.2d 119 (1977).

**26.** 204 U.S.App.D.C. 254, 636 F.2d 526 (1980).

**27.** See *id.* at 257, 636 F.2d at 529; 186 U.S.App.D.C. at 289, 569 F.2d at 120.

Trial-court dismissal of a lawsuit never heard on its merits is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions. And while appellate review is limited by the binding authority of *Link* to whether judicial discretion has been abused, a sound discretion hardly comprehends a pointless exaction of retribution.[28]

Consonantly, in *Jackson,* where the District Court had dismissed an action with prejudice for failure of the plaintiff's lawyer to comply with an order to report on progress toward settlement, we reversed.[29] Similarly, we held in *Butler* that the District Court had improperly denied a Rule 60(b)[30] motion to reinstate an earlier-dismissed case solely because the plaintiff's attorney neglected to answer interrogatories.[31] We noted that the dismissal occurred eight days prior to the date established for completion of discovery, observing that answers to the interrogatories still might have been filed by that date, and sanctions less drastic than dismissal were never attempted.[32]

We are advertent to the consideration that in each of these three cases, the misconduct at issue was that of an attorney rather than the plaintiff himself. But argument is hardly necessary to make the point that a *pro se* litigant, who may not fully understand the importance of precise compliance with court directives—including appearance times—should not be treated more harshly than litigants who have the funds to retain lawyers to advise and represent them. Members of the bar are not invariably punctual, and we are unaware of any general judicial practice of throwing their clients out of court the first time attorneys arrive somewhat late.[33] Certainly Camps' tardiness in the instant case, which may indeed have been excusable,[34] was no more egregious than that of counsel in *Jackson* and *Butler,* and we perceive no greater warrant for dismissal of his lawsuit.

As we indicated in *Jackson,* the absence of personal misconduct by a plaintiff having counsel is a factor worthy of consideration.[35] But we have not lost sight of the Supreme Court's admonition in *Link* that the difference between misbehavior of the plaintiff and that of his attorney is not so great as at first blush it might seem. *Link* teaches that when a plaintiff

> voluntarily cho[oses an] attorney as his representative in the action, ... he cannot ... avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."[36]

Since, then, the innocent client is merely to be treated as the *alter ego* of the misbehaving lawyer—with consequences no greater or lesser than the circumstances demand[37]—our holding in *Jackson* and *Butler* that a single act of misconduct seldom if ever can justify dismissal should not differ when it is a *pro se* litigant, rather than an attorney,

---

**28.** 186 U.S.App.D.C. at 292, 569 F.2d at 123 (footnotes omitted).

**29.** *Id.* at 289, 569 F.2d at 120.

**30.** Fed.R.Civ.P. 60(b).

**31.** 204 U.S.App.D.C. at 258, 636 F.2d at 530.

**32.** *Id.*

**33.** The District Judge handling Camps' case seemingly pursues such a practice. See note 14 *supra.* Our combined experience as lawyers and jurists suggests that it is very much the exception.

**34.** Camps says that he arrived late because of "circumstances beyond [his] control." See text *supra* at note 17. True it is that this explanation has not been tested, but it is uncertain that Camps has had a fair chance to verify it. See text *supra* at note 17.

**35.** 186 U.S.App.D.C. at 292–293, 569 F.2d at 123–124.

**36.** 370 U.S. at 633–634, 82 S.Ct. at 1390, 8 L.Ed.2d at 740, quoting *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955, 958 (1880) (footnote omitted).

**37.** See text *supra* at notes 29–33.

who is at fault. Put another way, while arguably an errant *pro se* party should not fare better than a party served by an errant lawyer, surely he should fare no worse. Perhaps, too, when the misconduct of the *pro se* litigant and that of the attorney-representative are of the same nature and degree, the situations should be dealt with in a like manner. The critical factor in each instance should be the seriousness of the misbehavior, and not the presence or absence of a legal representative.

This conclusion fully comports with the policy strongly favoring disposition of cases on the merits wherever possible. Moreover, it avoids a potentially difficult constitutional problem. As the Supreme Court observed in *Link*, "[t]he adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct."[38] While a lawyer may be presumed to be familiar with Rule 41(b)'s dismissal sanction, a potentially serious due process issue arises with respect to *pro se* litigants such as Camps who are summarily deprived of their causes of action without any warning. Because we find that dismissal of his action was not warranted, however, we need not tackle that thorny question.

█ In maintaining that a single act of misconduct by a lawyer or a *pro se* litigant should not ordinarily result in dismissal of his case, we have the support of several circuits. For example, in *Tolbert v. Leighton*,[39] the Ninth Circuit held

that it is an abuse of discretion to dismiss a plaintiff's case for failure to prosecute where (1) the *only* evidence of dilatoriness is his or his attorney's failure to attend a pretrial conference; (2) the court has not warned that failure to attend will create a risk of dismissal; and (3) the case is still "young."

Especially where one or more of these factors is present, before dismissing a case a district court must consider some of the less drastic alternative sanctions at its disposal.[40]

Other federal courts of appeals have reached the same conclusions.[41]

█ This, we think, is how it should be, for "[d]ismissal is a harsh sanction and should be resorted to only in extreme cases."[42] We do not question the authority of the District Court, in the exercise of its sound discretion, to dismiss cases that truly are unworthy of further judicial time and attention. We must insist, however, that the circumstances—particularly unavailability of an effective alternative sanction—make dismissal really appropriate, and that special care be taken to insure that *pro se* litigants are not treated more severely than those who can afford lawyers. We appreciate the difficulty that the District Court

---

38. 370 U.S. at 632, 82 S.Ct. at 1389–1390, 8 L.Ed.2d at 739.

39. 623 F.2d 585 (9th Cir. 1980).

40. *Id.* at 587 (emphasis in original).

41. See, *e.g.*, *Fisher v. Buehl*, 450 F.2d 950, 951 (3d Cir. 1971) (dismissal for failure to prosecute following counsel's failure to appear at scheduled pretrial conference constituted abuse of discretion); *Bush v. United States Postal Serv.*, 496 F.2d 42, 44 (4th Cir. 1974) (dismissal for failure to prosecute following counsel's absence from hearing on opposing party's motion to dismiss constituted abuse of discretion); *Moreno v. Collins*, 362 F.2d 176, 178 (7th Cir. 1966) (dismissal for want of prosecution following counsel's failure to appear at status call constituted abuse of discretion).

The same result has obtained in cases in which a plaintiff acting *pro se* committed a single act of misconduct. See, *e.g.*, *Holt v. Pitts*, 619 F.2d 558, 560–563 (6th Cir. 1980) (dismissal for want of prosecution following incarcerated plaintiff's failure to appear at preliminary hearing constituted abuse of discretion); *Navarro v. Chief of Police, Des Moines, Iowa*, 523 F.2d 214, 218 (8th Cir. 1975) (dismissal for want of prosecution following *pro se* plaintiff's excusable failure to respond to motion to dismiss constituted abuse of discretion); *Meeker v. Rizley*, 324 F.2d 269, 271 (10th Cir. 1963) (entering of default judgment following *pro se* plaintiff's failure to appear at pretrial conference, if treated as dismissal, amounted to clear abuse of discretion).

42. *Meeker v. Rizley, supra* note 41, 324 F.2d at 272.

may encounter in dealing with persons unfamiliar with its rules and procedures, and we are not prepared to condone Camps' failure to arrive on time for the status call.[43] Nonetheless, we are satisfied that the sanction imposed by the District Court, viewed in light of precedent and the totality of the circumstances, was far too grim. We might well assess the situation differently if this had not been his first infraction, and especially if the court, in addition to pinpointing his next appearance date, had informed Camps specifically of the consequences of late arrival. Indeed, the District Court would be well-advised to acquaint *pro se* litigants with the sort of risk tardiness creates when dismissal is the penalty contemplated therefor. Absent such advance warning, dismissal to drive a lesson home, we think, is more akin to overkill than judicial discretion.

### III. THE DISMISSAL OF EEOC

The District Court's order dismissing Camps' action against EEOC was separate from and prior to the order dismissing against C & P and CWA. The order respecting EEOC would have become final had the procedures prescribed by Civil Rule 54(b) been followed.[44] That was not done,[45] and resultantly the EEOC order remained interlocutory, and therefore subject to the District Court's revision at any time, until adjudication of all rights and liabilities of all parties.[46] To be sure, the EEOC order did achieve finality, for a while, upon entry of the dismissal against C & P and CWA,

the only other parties, for want of prosecution. But we today reverse the order terminating the lawsuit against C & P and CWA, and thereupon the order with respect to EEOC becomes interlocutory once again, and subject to modification by the District Court.

Against that backdrop, we will not address the question of the propriety of the dismissal of EEOC on this appeal. Inexplicably, Camps did not respond in the District Court to EEOC's motion therefor but insists in this court that the dismissal was wrong. While we may observe that the local rule upon which the District Court relied might have provided an adequate basis for the dismissal of Camps' suit against EEOC,[47] we leave the door ajar for the court to reconsider that action because of Camps' *pro se* status. Oral argument before us revealed that he had a great deal of difficulty in comprehending the proceedings before the District Court, and he may not have understood the consequences of his failure to resist EEOC's motion. EEOC has presented us with a well-reasoned argument that no cause of action exists against EEOC under Title VII[48] but, given the current posture of the case, we decline the invitation to reach out to address this question. We caution Camps carefully to consider EEOC's effort and to approach the District Court with any reasons he may have for vacatur of its dismissal of EEOC. We leave it to the District Court to determine, in the first instance, whether Camps

---

**43.** See note 34 *supra.*

**44.** "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of

judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R. of Civ.P. 54(b).

**45.** The order in question contained neither the express determination nor the express direction summoned by Rule 54(b). See note 44 *supra.*

**46.** See note 44 *supra.*

**47.** See note 9 *supra* and accompanying text.

**48.** See Brief for Appellee EEOC at 4–10. But see *Ham v. Smith,* 653 F.2d 628 (D.C.Cir. 1981) (District Court should accord special attention to *pro se* litigants faced with summary judgment motions).

has any valid ground for alteration of the disposition with respect to EEOC.

## IV. THE PRO SE PROBLEM

We are aware from the record that Camps sought an appointment of counsel by the District Court at an early stage in the proceedings.[49] The court had already granted Camps leave to file his suit *in forma pauperis*[50] but, declaring that "[t]he plaintiff in a *forma pauperis* civil suit, . . . does not have an absolute statutory or constitutional right to have counsel appointed,"[51] refused to appoint a lawyer for Camps.[52] In reaching that decision, the court stated that Camps had "not represented . . . that he ha[d] sought and been unable to find counsel to prosecute this case on a contingency fee basis,"[53] or tried to obtain assistance from one of the legal aid clinics in the area.[54] The court further opined that "a Title VII employment discrimination case such as this is unlikely to be the exceptional case that calls for the appointment of counsel" under the *in forma pauperis* statute.[55] Though Camps has not appealed the ruling on appointment of counsel, we feel obliged to utilize the opportunity to add a comment on that action, for such value as it may have for the proceedings on remand.

In this vein, we point out that many of the difficulties that Camps seems to have experienced in this litigation may have aris-en from his lack of legal representation. He told us during oral argument that he had made exhaustive but unfruitful efforts to find a lawyer to serve him.[56] While the District Court has considerable discretion in determining whether to assign a lawyer as an application of the *in forma pauperis* provision—and we do not suggest that it has abused its discretion in this case—we make these observations to pass along to the court revealing information we have acquired in the course of this appeal.

More importantly, we point out that another avenue is open to Camps in his effort to secure a court-appointed attorney. Whether or not a particular Title VII employment discrimination action is "the exceptional case that calls for the appointment of counsel"[57] under the *in forma pauperis* legislation, Title VII specifically authorizes district courts to assign counsel for complainants in suits brought thereunder.[58] So, whatever the fate of such cases with respect to the *in forma pauperis* statute, the District Court should not neglect a highly remedial provision of Title VII itself in considering whether to appoint a lawyer to represent Camps.

For the reasons stated, we reverse the District Court's dismissal of Camps' action against C & P and CWA[59] and remand the case to the District Court for further proceedings consistent with this opinion.

*So ordered.*

49. *Camps v. Chesapeake & Potomac Tel. Co.,* *supra* note 1, Motion for Appointment of Counsel (filed Jan. 2, 1980).

50. *Camps v. Chesapeake & Potomac Tel. Co.,* *supra* note 1, Fiat (filed Dec. 27, 1979).

51. *Camps v. Chesapeake & Potomac Tel. Co.,* *supra* note 1, Order (filed Apr. 11, 1980).

52. *Id.* at 2–3.

53. *Id.* at 2.

54. *Id.*

55. *Id.*

56. During oral argument, in response to questions from the bench, Camps stated that he had contacted several legal aid agencies throughout the city, including the Georgetown and Howard University clinics and Neighborhood Legal Services. He reported that they were unable to supply him with counsel.

57. See text *supra* at note 55.

58. 42 U.S.C. § 2000e–5(f)(1) (1976).

59. CWA has moved for dismissal from this appeal on the ground that Camps did not serve appellees with a copy of his brief. See *Camps v. Chesapeake & Potomac Tel. Co., supra* note 1, Motion to Dismiss for Failure to Serve (filed Apr. 20, 1981). Since CWA, like the other appellees, was on notice of the appeal, and indicated that it would subscribe to C & P's brief in the event that it did not win dismissal here, there is no prejudice from any error that Camps may have made. We accordingly deny the motion to dismiss.

MacKINNON, Circuit Judge (dissenting in part and concurring in part).

In my judgment the dismissal by the district court should be affirmed, without prejudice to the right of appellant to move under Rule Fed.R.Civ.P. 60(b)(1) to be relieved from the judgment on the grounds of mistake, inadvertence or excusable neglect. The majority opinion claims reliance on *Butler v. Pearson,* 636 F.2d 526 (D.C.Cir. 1980) and *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir.1977) for reversing the dismissal by the district court. However, the decisions in those cases were made on facts disclosed in the record in the district court following hearings on motions to reinstate the case. That is not the case here. Appellant never made any request to the district court to reinstate the case. He has thus failed to exhaust his remedies before the district court and comes here with no record whatsoever to attack the action the court has taken. The alleged facts upon which the court acts appear as statements in briefs before this court and as statements of appellant at oral argument in response to interrogation by the court. In addition, all the parties did not appear at oral argument because they had not been served. The court is thus acting as one of original jurisdiction to resolve facts, and in doing so, exceeds its jurisdiction which is supposed to be purely appellate in nature. This court should have refused to hear the case and left appellant to make his motion to the district court.

I also dissent from the discussion and reference to "misconduct" and its relevance to dismissal. This is not a case, on this record, of "misconduct." The case was not dismissed for "misconduct." It was dismissed as Fed.R.Civ.P. 41(b) authorizes for "failure ... to prosecute ...." Regardless of what the majority opinion states, failure to prosecute is not misconduct. In this instance, as in thousands of cases throughout the United States, whenever a party fails to appear at a calendar call or status hearing which is purposely set to consider the future trial of the case, in the absence of some other indication, such failure is interpreted almost uniformly as an indication that the party or parties *intend* to have the case dismissed. The district court here had every right to so conclude, given the fact that appellant did not appear after he was duly notified of the date and time for the hearing, even though the time set was affirmed by telephone on the day preceding the hearing.

It is clear, however, that appellant may move the district court under Fed.R.Civ.P. 60(b) to have the case reinstated on a proper showing. In my judgment he should so proceed and I concur in the court's decision that he may obtain counsel. To date, it appears that organizations that usually supply counsel to indigent or unknowledgeable parties have failed or refused to extend such assistance to appellant, apparently because they did not believe he had a meritorious case. The Equal Employment Opportunity Commission and appellant's union, the Communications Workers of America, Local 2336, both found that there was no reasonable cause to believe that his employer or his union had unlawfully discriminated against him. His defect, or so it seemed at oral argument, was that he was habitually tardy and hence unreliable; which was the same personal defect that led to the dismissal of his suit at the status call. It also appears that the groups of public interest lawyers who habitually represent worthy defendants, and many unworthy ones, in such cases, have considered his case and refused to represent Camps. These included, according to Camps' statement at oral argument: Howard Law School, Antioch Law School, Lawyers Referral Service and Neighborhood Legal Services. Under these circumstances it may be that the district court will be required to designate counsel to represent him.

All this might have been dispensed with, and this court might not have been required to spend an inordinate amount of time considering this case on a negative record if appellant had moved to have the court reinstate his case as the appellants did in *Butler v. Pearson,* and *Jackson v. Washington Monthly Co., supra.* I am concerned with the majority opinion citing those cases to

justify its action here. As explained above, the records in those cases are materially different, and therefore do *not* support the decision here. The majority's opinion to my mind is *sui generis,* and wrong. I believe we should affirm the district court and compel appellant to proceed by motion before the district court as the parties did in *Butler* and *Jackson.* I am not inclined to support the dismissal of cases on highly technical grounds, *Automated Datatron, Inc. v. Kenneth Woodcock,* 659 F.2d 1168 (D.C.Cir.1981) (MacKinnon, J., dissenting), but I do believe that a party who claims abuse of his rights should present his claim to the trial court, as was done in *Butler* and *Jackson,* in the first instance. To that extent I dissent from the basis the court relies upon to give appellant a further opportunity to present his case.