**Bruce E. GARDNER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 99–5065.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 2000.

Decided May 19, 2000.

Bruce E. Gardner, appearing pro se, argued the cause and filed the briefs for appellant.

Annette M. Wietecha, Attorney, United States Department of Justice, argued the cause for appellee. With her on the brief were Gilbert S. Rothenberg, Attorney, and Mary Lou Leary, United States Attorney at the time the brief was filed. Loretta C. Argrett, Assistant Attorney General, and Edward T. Perelmuter, Attorney, entered appearances.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Bruce Gardner, appearing *pro se*, appeals the District Court's dismissal of his complaint for failure to prosecute and for lack of subject matter jurisdiction. Mr. Gardner alleges that the Internal Revenue Service ("the Service") unlawfully levied his property without first sending a notice of federal tax deficiency to his last known address. The District Court dismissed this complaint *sua sponte* for failure to prosecute under FED.R.CIV.P. 41(b) ("Rule 41(b)") and, upon defendant's motion, for lack of subject matter jurisdiction. On appeal, the Service defends only the Rule 41(b) dismissal, abandoning any claim that federal courts lack subject matter jurisdiction over Mr. Gardner's cause of action.

The District Court understandably sought to sanction Mr. Gardner for failing to appear at a motions hearing. Given applicable Supreme Court and D.C. Circuit precedent, however, the District Court's dismissal in the context of the instant case constitutes an abuse of discretion. Mr. Gardner's nonappearance, while arguably irresponsible, did not justify a Rule 41(b) dismissal. In addition, the District Court erroneously found that it lacked subject matter jurisdiction over the complaint. Accordingly, we reverse and remand for further proceedings on the merits.

## I. BACKGROUND

Mr. Gardner formerly worked as an attorney in the Office of Chief Counsel to the Service at the Treasury Department. He was terminated for his alleged failure to comply with federal and state tax laws. Mr. Gardner filed three complaints before the District Court, all related to his compliance with federal and state tax laws; all were dismissed by the District Court. One of the complaints was a tax refund action, the dismissal of which this court summarily affirmed on October 8, 1999. The second complaint, appealed along with the instant case, seeks damages from a variety of defendants for allegedly unlawful disclosures of Mr. Gardner's private tax information. The instant case involves Mr. Gardner's *pro se* complaint, filed December 23, 1997, claiming that the Service unlawfully levied Mr. Gardner's bank account for an alleged 1990 tax deficiency of almost $4,000 without sending him a notice of deficiency and an opportunity to challenge the assessment in the United States Tax Court. Mr. Gardner, seeking to enjoin the Service from levying his property, bases his complaint on 26 U.S.C. § 6213(a) (Supp. IV 1998). Actions based on § 6213(a) to enjoin the Service's assessment of a tax deficiency before the Service mails a notice of deficiency to the taxpayer are exempt from the Anti–Injunction Act of Internal Revenue Code, 26 U.S.C. § 7421(a) (Supp. IV 1998).

On February 18, 1998, the Service filed a motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R.CIV.P. 12(b)(1) ("Rule 12(b)(1)"), arguing that Mr. Gardner must meet traditional equitable requirements (*i.e.*, demonstrate irreparable injury and the lack of an adequate remedy at law) as a prerequisite to obtaining injunctive relief under § 6213(a). On the day the Service filed its motion, Mr. Gardner filed an amended complaint affirmatively pleading grounds for equitable relief. The District Court struck the amended complaint from the record, because Mr. Gardner had not sought leave to file.

After delays that no one attributes to Mr. Gardner, the District Court scheduled a hearing on January 27, 1999, to consider the motion to dismiss, along with motions to dismiss filed in Mr. Gardner's other two cases. On January 21, Mr. Gardner moved to continue the motions hearing, contending that a continuance was necessary because he had the flu and he had suffered burns during a fire in his home. The District Court, after a teleconference held on January 22, denied Mr. Gardner's motion. The District Court indicated that it would accommodate Mr. Gardner's physical condition during the hearing. Mr. Gardner failed to appear in court on January 27 and he telephoned the court later that evening to state that he had slept through the hearing.

On January 28, Mr. Gardner filed a motion to reschedule the hearing; the motion also offered an explanation for his absence from the January 27 hearing. He included a doctor's note stating that, on January 21, his physician treated him for syncope and bronchitis, prescribed antibiotics, and instructed Mr. Gardner to get bed rest. He also made several claims to the effect that his illness, the fire in his home, and his intense preparation for the motions hearing had combined to deprive him of necessary sleep and stamina. According to plaintiff, he was so disoriented that, until he heard the evening news on January 27,

he was under the impression that it was January 26.

On January 29, the District Court denied Mr. Gardner's motion to reschedule the hearing. The court also granted defendant's motion to dismiss on two grounds. First, the District Court dismissed the complaint under Rule 41(b) for failure to prosecute the complaint. *See Gardner v. United* States, Civ. Act. No. 97–3075, Mem. Op. & Order at 2 (D.D.C. Jan. 29, 1999). The court noted that it previously had denied Mr. Gardner's motion for continuance and that Mr. Gardner had stated that he would appear on January 27. *See id.* at 1–2. The court also declared that it had not intended to hear argument on January 27, because it already had decided to issue orally its ruling dismissing Mr. Gardner's complaint for lack of subject matter jurisdiction. *See id.* at 2. The District Court found that it lacked jurisdiction because Mr. Gardner had failed to demonstrate irreparable injury and a lack of an adequate remedy at law. *See id.* at 4. The court dismissed as moot Mr. Gardner's motion for reconsideration of the order striking his first amended complaint from the record.

Mr. Gardner moved for reconsideration, further detailing the events leading up to his absence from the hearing. He stated that on January 12, 1999, he began taking Nyquil and Chlortrimeton, an antihistamine, and that he was without heat for one day in January because his house lost electricity during an ice storm, exacerbating his illness. Mr. Gardner also revealed that, on January 18, a fire had broken out in his children's room and he had sustained third-degree burns to his hands while dragging a burning mattress from the house. The court denied Mr. Gardner's motion for reconsideration. This appeal followed.

## II. DISCUSSION

### A. Rule 41(b) Dismissal

██ Under Rule 41(b), a court may dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with … any order of court." In the instant case, the District Court dismissed the complaint because Mr. Gardner failed to attend the January 27, 1999, motions hearing. We review for abuse of discretion. *See Bristol Petroleum Corp. v. Harris,* 901 F.2d 165, 167 (D.C.Cir.1990). While this is a deferential standard, we have made it clear that, "under certain circumstances, dismissal may be an unduly severe sanction for a single episode of misconduct." *Id.* A District Court may dismiss under Rule 41(b) "only after less dire alternatives have been explored without success." *Trakas v. Quality Brands, Inc.,* 759 F.2d 185, 187 (D.C.Cir.1985).

The Supreme Court established the framework for reviewing a *sua sponte* dismissal for failure to prosecute in *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In *Link,* plaintiff's counsel missed a pretrial conference but did not inform the court of his impending nonattendance until the day of the conference. *See id.* at 627–28, 82 S.Ct. 1386. The District Court, after reviewing the history of the case (including plaintiff's repeated untimely responses to defendant's interrogatories), found that plaintiff's counsel did not provide a reasonable explanation for his nonappearance and dismissed the complaint for failure to prosecute. *See id.* at 628–29, 82 S.Ct. 1386.

The Court affirmed the dismissal, failing to find an abuse of discretion because: (1) the District Court relied only in part on counsel's nonappearance; (2) the excuse offered by counsel was inadequate; and (3) "it could reasonably be inferred from his absence, as well as from the drawn-out history of the litigation, that petitioner had been deliberately proceeding in dilatory fashion." *Id.* at 633, 82 S.Ct. 1386 (footnote and citation omitted). The Court did not reach "whether *unexplained* absence from a pretrial conference would *alone* justify a dismissal with prejudice if the record showed no other evidence of dilato-

riness on the part of the plaintiff." *Id.* at 634, 82 S.Ct. 1386 (first emphasis added).

As we previously have noted, it is important to recall that the "lawyer's default [in *Link*] ... was merely the culmination of a protracted course of dilatory tactics and other improper behavior in litigation that had dragged on for six years." *Camps v. C & P Tel. Co.*, 692 F.2d 120, 122 (D.C.Cir. 1982) (footnote omitted). In contrast, this court has held "that dismissal is rarely if ever appropriate when there is but a single instance of attorney-misconduct," as in the instant case. *Id.* This is because the *sua sponte* dismissal of a lawsuit on the merits is " 'a drastic step, normally to be taken only after unfruitful resort to lesser sanctions.' " *Id.* at 123 (quoting *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C.Cir.1978)); *see also Bristol Petroleum Corp.*, 901 F.2d at 167 ("[D]ismissal is in order only when lesser sanctions would not serve the interests of justice.").

■ There are three basic justifications for dismissal because of attorney misconduct: (1) prejudice to the other party; (2) failure of alternative sanctions to mitigate the severe burden that the misconduct has placed on the judicial system; and (3) deterrence of future misconduct. *See Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C.Cir.1986). These justifications are not easily met. Prejudice, for instance, must be "so severe[ ] as to make it unfair to require the other party to proceed with the case." *Id.* Similarly, a malfeasant party places a severe burden on the judicial system if "the court [is required] to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases." *Id.* at 1075–76. The final rationale, deterrence, justifies dismissals when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications. *See id.* at 1078.

■ Defendants have alleged no prejudice from Mr. Gardner's failure to appear at the January 27 conference. And given the District Court's observation that it would not hear argument at the hearing and its intention to resolve the case on jurisdictional grounds despite Mr. Gardner's failure to appear, his nonappearance cannot be said to have interfered with the orderly administration of the trial court's business. *Cf. id.* at 1076–77 (concluding that "repeated failure to attend status conferences" in that case did not constitute prejudice to the judicial system). Of the enumerated justifications for *sua sponte* dismissal, then, only the last, deterrence, has any application to the instant case.

Mr. Gardner's situation, however, is not one to which the deterrence rationale speaks with great eloquence. There are three reasons for this: first, this was Mr. Gardner's only failure to comply with an order of the District Court; second, there is no evidence that Mr. Gardner acted in bad faith by failing to appear at the hearing; and third, the trial court provided no warning to Mr. Gardner of the consequences of nonappearance. We also note that there is nothing in the record to indicate that the District Court considered alternative sanctions for Mr. Gardner's misbehavior.

The District Court did not identify any prior instance of misconduct on Mr. Gardner's part. Indeed, the court observed that Mr. Gardner's absence was "atypical." That Mr. Gardner had never before failed to comply with the District Court's orders argues in favor of reversal. *See Trakas*, 759 F.2d at 188. In addition, as in *Trakas*, there is no evidence in the record of "bad faith, deliberate misconduct, or tactical delay." *Id.* In fact, Mr. Gardner provided a supportable explanation for why he failed to attend the hearing. Finally, the trial court did not warn Mr. Gardner that the case would be dismissed if he failed to appear. "Absent such advance warning [of the consequences], dismissal to drive a lesson home, we think, is more akin to over-

kill than judicial discretion." *Camps,* 692 F.2d at 125. In short, dismissal in this case was unwarranted.

We appreciate the difficulty faced by the District Court in this case. Mr. Gardner had filed three complaints before the court. One of the complaints consisted of 44 counts and named as defendants the United States, the Service, the State of California, and several individual Service employees, among others. Prior to dismissing the complaint in the instant case, the District Court had denied Mr. Gardner's motion for a continuance, and had been assured that Mr. Gardner would attend the January 27 hearing. In this circumstance, we cannot doubt that Mr. Gardner's failure to appear was an annoying occurrence. Nonetheless, given that this was Mr. Gardner's only "failure . . . to prosecute or to comply with . . . any order of court," Fed.R.Civ.P. 41(b), we find that the District Court abused its discretion in dismissing his case. Here we do not have a case of an unexplained absence from the motions hearing, or any evidence that Mr. Gardner deliberately sought to delay adjudication of the merits of his complaints. Moreover, the record does not show that the District Court considered the availability of a lesser sanction. While the District Court's decision in the instant case may not " 'comprehend[ ] a pointless exaction of retribution,' " *Camps,* 692 F.2d at 123 (quoting *Jackson,* 569 F.2d at 123), it does cross the line to abuse of discretion. *See, e.g., Berry v. District of Columbia,* 833 F.2d 1031, 1037 (D.C.Cir.1987) (reversing dismissal where attorney failed to file a pretrial brief by specified date, failed to attend a status conference, and failed to file a pleading specifically requested by the court); *Tolbert v. Leighton,* 623 F.2d 585, 587 (9th Cir.1980) (finding abuse of discretion where the only evidence of dilatoriness was attorney's failure to attend a pretrial conference, the court had not warned that nonappearance would result in a dismissal, and the case was still "young").

We emphasize that we do not call into question the District Court's denial of both Mr. Gardner's motion for a continuance and his motion to reschedule the hearing, because those decisions are not before us. Nor does our disposition of this case revive Mr. Gardner's tax refund complaint, the dismissal of which this court summarily affirmed on October 8, 1999. We hold only that, given the particular facts of this case, the District Court abused its discretion in dismissing Mr. Gardner's complaint for failure to prosecute.

### B. Subject Matter Jurisdiction

■ The District Court also dismissed Mr. Gardner's complaint under Rule 12(b)(1), holding that Mr. Gardner was required to plead equitable grounds for relief in order to obtain an injunction under 26 U.S.C. § 6213(a). Before this court, the Government does not defend the District Court's Rule 12(b)(1) dismissal. Accordingly, there is no longer any dispute between the parties as to whether a federal court may entertain jurisdiction over Mr. Gardner's complaint. This does not moot the issue, however. We are a court of limited jurisdiction and must be satisfied through our own inquiry of our power to hear this dispute. *See Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). In contrast to the issue of personal jurisdiction, parties may not waive or concede a federal court's subject matter jurisdiction. *See Jackson v. Ashton,* 33 U.S. (8 Peters) 148, 148–49, 8 L.Ed. 898 (1834) (reversing for lack of subject matter jurisdiction even though appellee had "no objection to the court's proceeding in the case.").

Mr. Gardner seeks an injunction preventing the Service from levying his bank account to assess an alleged deficiency in his 1990 federal tax return. The Anti–Injunction Act, a provision of the Internal Revenue Code, states that, "[e]xcept as provided in section[ ] . . . 6213(a), . . . no suit for the purpose of restraining the

assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The District Court must dismiss for lack of subject matter jurisdiction any suit that does not fall within one of the exceptions to the Anti–Injunction Act. Mr. Gardner seeks to bring his suit within one of § 7421(a)'s exceptions, arguing that the Service violated § 6213(a) by levying his bank account without first mailing him a notice of deficiency. For the purposes of deciding whether we have jurisdiction over Mr. Gardner's complaint, we will accept as true his allegation that the notice of deficiency was never mailed to him.

Section 6213(a) establishes the Service's authority and responsibility to send a notice of deficiency to a taxpayer prior to initiating proceedings to assess the deficiency. With a notice of deficiency in hand, a taxpayer may file suit in Tax Court challenging the assessment, and the Service is prohibited from enforcing the assessment until the Tax Court's decision regarding the petition for review becomes final. *See id.* § 6213(a). If the taxpayer does not file suit in Tax Court in the time allotted after receipt of the notice of deficiency, the Service may, among other things, impose a levy upon the taxpayer's property, after notice, to recover unpaid taxes. *See id.* § 6331(a) (1994).

There is some dispute among the circuits whether a taxpayer must allege traditional grounds for equitable relief to establish a *prima facie* claim under § 6213(a) (*i.e.*, irreparable harm and lack of an adequate remedy at law). The District Court, following the Ninth Circuit, dismissed the complaint, because Mr. Gardner failed to allege any equitable grounds for relief. *See* Mem. Op. & Order at 4 (*citing Elias v. Connett,* 908 F.2d 521, 523 (9th Cir.1990)). The Ninth Circuit is in the lead among those circuits that imply this requirement in § 6213(a) claims, with the circuit's rea-

soning set out in *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 313 (9th Cir.1982).

In *Cool Fuel,* the District Court had granted summary judgment for the Service where a taxpayer alleging a violation of § 6213(a) had not met the requirements for equitable relief. The Ninth Circuit affirmed, finding both a presumption that equitable grounds be met for a court to issue an injunction and "that section 6213 does not abolish equitable tenets to support injunctive relief." *Id.* (relying on *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). The court emphasized § 6213(a)'s permissive language. *See Cool Fuel,* 685 F.2d at 313 (noting that § 6213(a) provides that an assessment based on a notice of deficiency "may be enjoined" by a court). Because a taxpayer retains the right to institute a refund suit after payment of taxes, and the taxpayer in *Cool Fuel* could afford to pay the disputed tax prior to an adjudication of the alleged deficiencies, the court found that an equitable remedy was not available. The Third and Eleventh Circuits have followed the Ninth Circuit's rule. *See Flynn v. U.S., By and Through Eggers,* 786 F.2d 586, 591 (3rd Cir.1986); *Lovell v. United States,* 795 F.2d 976, 977 (11th Cir.1986).

The Tenth Circuit, in *Guthrie v. Sawyer,* 970 F.2d 733, 736–37 (10th Cir. 1992), reached a different result. Having reviewed the circuits' competing opinions, we think that the Tenth Circuit clearly has the best of the argument. Accordingly, we hold, in accord with *Guthrie,* that

> [t]he purpose of the statutory exception [in § 6213(a) ] is to preserve the taxpayer's right to litigate his tax liability in Tax Court *before* paying the tax. If the availability of a refund suit *after* payment prohibits the taxpayer from obtaining an injunction to protect his right to litigate first, that right is virtually meaningless. Under this approach, this right would be available only upon a showing that the taxpayer could not pay the tax. We have difficulty believing

that Congress intended to give with one hand and take back with the other. 970 F.2d at 736.

The result that we reach is not contrary to the principles announced in *Romero-Barcelo*. In that case, the Supreme Court merely observed that courts should "not lightly assume that Congress has intended to depart from established [equitable] principles." 456 U.S. at 313, 102 S.Ct. 1798. In *Romero-Barcelo*, however, the Court expressly distinguished *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), in which the Court held that "Congress had foreclosed the exercise of the usual discretion possessed by a court of equity" when it passed the Endangered Species Act, 16 U.S.C. §§ 1531–1544. *Romero–Barcelo*, 456 U.S. at 313, 102 S.Ct. 1798 (citing *Tennessee Valley Authority*, 437 U.S. at 173, 98 S.Ct. 2279). According to the *Romero-Barcelo* Court, the difference was that in *Hill*, the statute providing the basis for the challenge "contain[ed] a flat ban" on the challenged activity. 456 U.S. at 314, 102 S.Ct. 1798. Similarly, here § 6213(a) flatly prohibits the activity challenged by Mr. Gardner. *See* 26 U.S.C. § 6213(a) (providing that the Service shall begin "no levy or proceeding" to collect on a notice of deficiency until a period after the notice has been mailed to the taxpayer). This statutory scheme, in combination with the *Guthrie* Court's reasoning, convinces us that Congress did not intend that litigants need establish equitable grounds for injunctive relief under § 6213(a).

We decline to follow *Cool Fuel* for a third reason. The *Cool Fuel* court cited *Bob Jones University v. Simon*, 416 U.S. 725, 742 n. 16, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), to support its finding that "congressional history [of § 6213(a)] is barren of indicated intent to abandon historical principles of equity jurisprudence." 685 F.2d at 313. *Bob Jones University* involved an interpretation of the Anti–Injunction Act, however, not § 6213(a). In fact, the Court explicitly noted that "[n]one of the exceptions in § 7421(a) is relevant to this case." *Bob Jones University*, 416 U.S. at 732 n. 6, 94 S.Ct. 2038. Therefore, it is of no moment that the Court in *Bob Jones University* held that traditional equitable principles were applicable to an action under the Anti–Injunction Act that did not fall into any of the enumerated exceptions. Of greater note, we think, is the Supreme Court's failure to discuss traditional grounds for equity jurisdiction when holding that taxpayers to whom the Service had not mailed notices of deficiency are entitled to bring suit under § 6213(a). *See Laing v. United States*, 423 U.S. 161, 183–85 & 184 n. 27, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976).

### III. CONCLUSION

For the reasons articulated herein, we reverse the District Court's decision and remand for proceedings on the merits.