Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2007          Decided November 2, 2007

No. 06-5173

PATRICIA L. SIMS,
APPELLANT

v.

STEPHEN L. JOHNSON, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 97cv00570)

———

*Bruce J. Terris* argued the cause for appellant.  With him on the briefs was *Sameena S. Majeed.*

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

ROGERS, *Circuit Judge*:  Patricia L. Sims appeals the denial of her motion for a declaratory judgment concerning the payment of attorneys' fees.  In 1999, the parties entered into a settlement of Sims' discrimination claims that left for future resolution the amount and terms of the government's payment of attorneys' fees and costs.  In 2003, a Magistrate Judge found that Sims' former attorney and the government had reached a compromise settlement regarding attorneys' fees.  The record, however, does not reveal the terms of the compromise settlement, which are disputed and underlie Sims' request for declaratory relief. We therefore must vacate the order denying Sims' motion and remand the case to the district court.

## I.

In 1997, Sims sued the Environmental Protection Agency pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended, and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*., as amended.  By letter agreement of March 25, 1999, the parties resolved Sims' substantive claims and required the government to pay her reasonable attorneys' fees and costs.  The amount and terms of that payment were left for future negotiations.  On June 9, 2000, the district court enforced the letter agreement at Sims' request, finding that the parties had reached an agreement in principle on the material terms of a settlement and dismissing the case without prejudice. When Sims subsequently moved to reopen the case, the district court, on October 4, 2000, restored the case to the active docket to address the remaining issues, including attorneys' fees.

On March 28, 2001, David H. Shapiro, as Sims' former

attorney, filed a motion for an award of reasonable attorneys' fees of $150,269.21, not including Sims' out-of-pocket expenses or fees of her initial, deceased counsel (Gary Simpson). Shapiro also filed a motion to withdraw from the case, citing a breakdown in his relationship with Sims as she refused to let him settle the fees issue with the government. The government, in turn, stated that it was "impossible to respond" because the motion appeared to have been filed by counsel alone, without Sims' support or consent, noting that "[t]he law is clear . . . that an attorney fee award under Title VII is due and payable to the plaintiff, not to the plaintiff's counsel," Resp. at 2, and that "it cannot reach such an agreement without the consent of Plaintiff," *id*. at 4. On May 23, 2001, the district court referred these and other related motions to a Magistrate Judge "for settlement and resolution of the currently pending motions."

Before the Magistrate Judge, Richard L. Swick (Shapiro's law partner) and Bruce L. Terris, representing Sims, stated that "a comprehensive motion" on attorneys' fees and costs would be filed. Tr. Mar. 27, 2002 at 3. Terris stated that there was no objection to Shapiro's motion to withdraw, while noting outstanding issues regarding how the substantive provisions of the letter agreement were being carried out. *Id*. at 2-3. The Magistrate Judge observed that the latter were for the district court judge to resolve and directed Sims to file an amended motion for attorneys' fees, which she did on April 24, 2002. That motion requested the payment of three amounts: $2,018.00 "directly payable to Ms. Sims for out of pocket expenses she incurred directly"; $150,269.12 for attorneys' fees and costs incurred by Swick & Shapiro; and $9,613.75 for attorneys' fees and costs incurred for services by Sims' initial attorney (Simpson).

By memorandum order of February 28, 2003, the Magistrate Judge granted the motion for a settlement conference

and Shapiro's motion to withdraw and "denied as moot" Sims' amended motion for attorneys' fees. The memorandum order recited that there had been a "telephonic status conference" on February 24, 2002 during which "counsel for Defendant and David Shapiro's law partner [Richard L. Swick] represented that they had agreed on a compromise settlement on the attorneys' fees issue." Mem. Order Feb. 28, 2003 at 2. "Counsel for Plaintiff and . . . Defendant also represented that the issue of reimbursement of Plaintiff's costs is not disputed by either party." *Id.*

Over two years later, by letter of May 20, 2005 to government counsel, former counsel Swick enclosed a signed release for fees due in Sims' case and confirmed that the payment of $120,000 for attorneys' fees and costs due to Swick & Shapiro (and including any fees and costs due to Sims' initial attorney's estate) should be paid directly to the law firm's trust account. The release stated: "This Release constitutes the complete and full agreement between the parties as to costs and fees accrued prior to and including February 28, 2003 and associated with this lawsuit." On September 22, 2005, Swick informed Sims that the government had paid the law firm and he enclosed a check to reimburse Sims for her expenses. On September 27, 2005, the government sent Sims a check for $8,600, pursuant to the 1999 letter agreement, in settlement of her discrimination claims.

On December 7, 2005, Sims filed a motion for a declaratory judgment alleging that the government's payment to her former attorney's law firm was contrary to her instructions, not made pursuant to a court order or any agreement by her, and "therefore does not constitute the payment for the attorneys' fees and expenses of plaintiff in this case." Mot. for Decl. J. at 1. The accompanying memorandum stated that "[t]he payment was made even though plaintiff's present counsel, Bruce J. Terris,

repeatedly informed both Swick & Shapiro and defendant's counsel, that plaintiff opposed any payment of attorneys' fees unless and until plaintiff was protected from the payment of income tax on money which would not come to her." Mem. at 1. Attached was Terris' affidavit setting forth his contacts with Swick and government counsel. The district court denied the motion, ruling that the government's payment was made pursuant to its obligations under the parties' 1999 letter agreement, which had been enforced at Sims' request, and the Magistrate Judge's 2003 memorandum order. Sims appeals.

**II**.

As a threshold matter, the government contends that the court lacks jurisdiction over the current dispute because Sims' appeal is untimely and, alternatively, that even if the current dispute is subject to judicial review, exclusive jurisdiction lies in the United States Court of Claims. Sims appropriately responds that her appeal is timely because it was filed within sixty days of the denial of her motion, *see* FED. R. APP. P. 4(a)(1)(B). Sims' underlying case has never been formally dismissed either by the district court pursuant to Federal Rule of Civil Procedure 58(a), *see Bailey v. Potter*, 478 F.3d 409, 411 (D.C. Cir. 2007) (citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384-85 (1978)), or by stipulation of the parties pursuant to Federal Rule of Civil Procedure 41(a). Further, because Sims' motion does not assert a breach of contract claim, the Court of Claims does not have exclusive jurisdiction and the government's reliance on *Hansson v. Norton*, 411 F.3d 231 (D.C. Cir. 2005), is misplaced. Finally, given the ambiguity in the record, to which we now turn, it is premature to characterize Sims' motion for declaratory relief, as the government suggests, as a ploy to avoid the strictures of Federal Rule of Appellate Procedure 4(a). *See, e.g.*, *Glinka v. Maytag Corp.*, 90 F.3d 72, 74 (2d Cir. 1996).

In denying Sims' motion for a declaratory judgment, the district court concluded that Sims was trying to rewrite history by suggesting that at the time of the government's payment of $120,000 the parties were still negotiating the contours of a global settlement of the merits of her case. Observing that the underlying merits had long been settled by the parties' letter agreement that had been enforced at Sims' request, the district court noted that the Magistrate Judge had "ruled that the parties had reached an agreement – effectively closing the case." Mem. Op. Apr. 11, 2006 at 14. Inasmuch as the parties had not reached any new settlement of the issues, the district court viewed the government as "merely issu[ing] the payments contemplated by, and pursuant to, the pre-existing agreements in this case, as was ordered by both this [c]ourt and [the Magistrate Judge]." *Id*. at 16. Because it deemed the case over, the district court rejected Sims' argument, based on *Evans v. Jeff D.*, 475 U.S. 717, 730-31 & n.20 (1986), that she had the right to waive the right to seek attorneys' fees. The district court observed that if Sims wanted protection against potential tax consequences of the payment of her attorneys' fees, then she "should have bargained for such provisions during the settlement process or during the mediation before [the Magistrate Judge]." *Id.* at 17.

The district court's interpretation and enforcement of its orders is entitled to deference, for our review is limited to determining whether there was an abuse of discretion. *See Nix v. Billington*, 448 F.3d 411, 414 (D.C. Cir. 2006) (citing *Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000)). The record supports the district court's finding that the merits of Sims' discrimination claims had been settled by the parties and enforced by the district court prior to the current dispute. The district court also may be correct that the compromise settlement referenced in the Magistrate Judge's 2003 memorandum order resolved the outstanding attorneys'

fees issues.  However, on appeal, the parties present differing interpretations of the terms of the 2003 compromise settlement. Neither the district court in denying Sims' motion for a declaratory judgment nor the Magistrate Judge in issuing his memorandum order recites the terms of the compromise settlement, and the record before this court does not reveal them.

Whether the compromise settlement contemplated further negotiations or represented a final resolution of the attorneys' fees issues is dispositive of Sims' request for declaratory relief. If the attorneys' fees issues were resolved in that compromise settlement, Sims agreed to it at that time and she cannot obtain declaratory relief on the basis of her present argument.  If, on the other hand, the fees issues were still under discussion when the government paid the law firm $120,000 in 2005, then Swick was not authorized to finalize the fees payment without Sims' consent.   Although Sims authorized her former attorney (Shapiro) to submit an attorneys' fees motion, she did not thereby abdicate her role in the final resolution of the fees issues; the law draws a distinction between the power to conduct negotiations and the power to end a dispute.  *See Makins v. District of Columbia*, 861 A.2d 590, 595 (D.C. 2004); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 22 cmt. c (2000).

Neither the record nor the parties' briefs shed much light on the terms of the compromise settlement.  For example, Sims asserts that "[t]he reason that [her present attorney, Terris] agreed [to the compromise settlement] was that Mr. Smith [the government counsel], Mr. Shapiro [Sims' former attorney], and appellant [i.e., Sims through Terris] were in ongoing negotiations over fees and other settlement issues."  Appellant's Reply Br. at 10.  The government offers that the Magistrate Judge's memorandum order "resolved *that* issue" and that "the amount was agreed upon between the parties and so represented

to [the Magistrate Judge]." Appellee's Br. at 22 (emphasis added). The record's silence between the 2003 compromise settlement and the government's 2005 payment of $120,000 to Swick & Shapiro could support either party's account: the delay in payment is consistent with Sims' view that terms remained unresolved, while the lack of communication between the parties for several years could indicate that negotiations had ended on February 28, 2003, supporting the government's view that all attorneys' fees issues were resolved and perhaps suggesting that Sims' attempt to undo the compromise settlement arose only when she realized that tax protection was a possibility under the American Jobs Creation Act, Pub. L. No. 108-357, 118 Stat. 1546 (2004). Government counsel's response to Terris, by letter of June 23, 2005, does not clarify the matter, for it references only the 1999 letter agreement as the source of the government's obligation to pay the fees, implying that the 2003 compromise settlement offered no additional clarification on the terms of payment.

Because the record does not resolve the parties' dispute whether the compromise settlement referenced in the Magistrate Judge's 2003 memorandum order finally resolved the terms of the government's payment of Sims' attorneys' fees, we must vacate the order denying declaratory relief and remand the case to the district court for an evidentiary hearing. *See United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001) (citing *Autera v. Robinson*, 419 F.2d 1197, 1202-03 (D.C. Cir. 1969)). Given the age of this case and the efforts by the district court and the Magistrate Judge to resolve it, we do so reluctantly. However, the issue Sims presents is not frivolous or trivial, *see Autera*, 419 F.2d at 1203, although the court has no occasion to express an opinion on whether the parties would be able to reach a tax indemnification agreement.

KAVANAUGH, *Circuit Judge*, dissenting: I respectfully dissent. I agree with District Court Judge Kollar-Kotelly's thorough and persuasive opinion denying Sims' motion for declaratory judgment. *See Sims v. Johnson*, No. 97-570, 2006 WL 949917 (D.D.C. Apr. 11, 2006).

Sims settled her discrimination suit with the Government in 1999, and she settled the attorney's fees issue with the Government in 2003, as reflected in a contemporaneous order issued by Magistrate Judge Kay. Consistent with the 2003 agreement, the Government then paid the attorney's fees as required. Realizing after the fact that the fees agreement would have less-than-ideal tax consequences – in part because it would not allow her to take advantage of a 2004 change in the tax law – Sims is now trying to say, in effect, that there was never a fees agreement. The District Court correctly rejected Sims' claim as a blatant attempt to rewrite history. The District Court added that if Sims wanted to "create certain protections vis-á-vis tax liability," she should have "bargained for such provisions during the settlement process or during the mediation before Magistrate Judge Kay." *Id.* at *10.

Parties may not wriggle out of a contract simply because of subsequent tax law developments or because they failed to anticipate tax consequences when forming the agreement. Sims may have a problem with how her former or current attorneys advised her. But her settlement and fees agreements with the Government are binding, and her case against the Government is over. In my judgment, we do neither the parties nor our overburdened district courts any favors by further prolonging this decade-old case.